1    **WO**

2                          NOT FOR PUBLICATION

3

4

5

6

7              **IN THE UNITED STATES DISTRICT COURT**

8                  **FOR THE DISTRICT OF ARIZONA**

9

10   Arek Fressadi,                          No. CV-16-03260-PHX-DJH

11              Plaintiff,                    **ORDER**

12   v.

13   Kathryn Ann Glover, et al.,

14              Defendants.

15

16          Pending before the Court are several motions challenging the Court's subject matter

17   jurisdiction filed by *pro se*[1] Plaintiff Arek Fressadi ("Plaintiff") (Docs. 285, 286 & 315).

18   These filings contend Defendants' removal of this case to federal court was improper and

19   seek to have the consolidated actions remanded.[2]  Defendants Kathryn Glover ("Glover")

20   and Rod Robertson Enterprises Inc. ("RRE") (collectively "Defendants") have responded

21   to Plaintiff's motions (Docs. 295, 297, 298, 319 & 323) and Plaintiff has filed supporting

22   reply briefs (Docs. 299, 301 & 325).   The Court recently granted Plaintiff's multiple

23   requests to stay these proceedings (*see* Docs. 287, 288, 291 & 315[3]) pending a ruling on

24   ---
     [1] Plaintiff has represented himself throughout these proceedings, with the exception of the
25   time period between April 24, 2018, and November 8, 2018.

26   [2] Plaintiff has given various titles to these motions, however, all challenge the properness
     of the action's removal and the Court's subject matter jurisdiction over the cases.

27   [3] Plaintiff also argues in his second Motion to Stay that the undersigned should disqualify
     herself for bias and prejudice per 28 U.S.C. § 455(a) and (b)(1) (Doc. 315 at 4).  This is
28   not the first time Plaintiff has so argued. (*See* Docs 111, 190).  In his motion, Plaintiff
     reiterates his argument that the Court is biased because it has issued rulings that are

his requests to remand. (Doc. 337). This Order being that ruling, the stay is now lifted. Also pending before the Court is RRE's Sealed Motion for Summary Judgment (Doc. 239) and Plaintiff's Motion for Leave to Amend his Complaint (Doc. 308), the latter to which Glover has responded (Doc. 316) and Plaintiff has replied (Doc. 320).[4] Before reaching the merits of RRE's Motion for Summary Judgment or Plaintiff's Motion for Leave to Amend, however, the Court will assess the threshold jurisdictional issues raised by Plaintiff.

## BACKGROUND[5]

The events giving rise to Plaintiff's complaints occurred on or about August 26, 2014, in Pima County. While riding a 1993 Suzuki motorcycle, Plaintiff was allegedly hit from behind by Glover and airlifted from the crash site to the hospital. (Doc. 4-7 at 6). Plaintiff claims that, before being evacuated, he told Glover and the responding Pima County Sheriff's deputies to use his free towing coverage from Liberty Mutual Insurance ("Liberty") to have the motorcycle towed to his garage. (*Id.* at 6-8). This did not occur, and the motorcycle was instead towed to RRE's storage yard. (*Id.* at 8).

Throughout the next three months, Plaintiff underwent various surgeries to treat injuries from the accident. (*Id.*) He was often sedated due to the pain of his injuries and subsequent surgeries. (*Id.*) During this time, Pima County Sheriff's Department ("PCSD") sent him a letter dated August 27, 2014, stating that, if his motorcycle was not released from RRE's storage yard within 10 days, a claim could be filed to transfer ownership of

unfavorable to him and has not decided his multiplicity of motions to his desired speed (Doc. 315 at 4-6). These circumstances do not warrant disqualification under 28 U.S.C. § 455(a) and (b)(1) and the Court will again deny Plaintiff's request for disqualification. *See also Litekey v. U.S.*, 510 U.S. 540, 554 (1994); *Matter of Beverly Hills Bancorp*, 752 F.2d 1334, 1341 (9th Cir. 1984).

[4] Plaintiff has requested expedited hearings on a number of his motions. The Court does not find that oral argument would assist the Court in its determination of the issues because the parties have had an adequate opportunity to present their written arguments. Therefore, oral argument is unnecessary, and Plaintiff's requests are denied. *See* Fed.R.Civ.P. 78(b); LRCiv. 7.2(f).

[5] The facts in this section are taken from Plaintiff's pleadings and the state court record, unless otherwise indicated. The Court presumes familiarity with the lengthy procedural background in this Court since the action was removed, prolonged by Plaintiff's frequent filings, and therefore does not detail that background here.

the motorcycle.  (*Id.* at 7).  In order to release the vehicle, Plaintiff had to present PCSD with proof of ownership and pay for all related towing and storage fees.  (*Id.*)

Plaintiff claims he first learned his motorcycle had been taken to RRE's storage yard in late September 2014.  (*Id.* at 9).  He called RRE, who told him that he needed to get clearance from PCSD to release his motorcycle.  (*Id.*)  He then contacted PCSD, who informed him that he would need to present his driver's license in person, proof of insurance, and a fee in person to get clearance to release the motorcycle.  (*Id.*)  Plaintiff claims he was unable to physically present these documents due to his injuries.  (*Id.*)

After receiving RRE's notification that no one had claimed the motorcycle, Arizona's Motor Vehicle Department ("MVD") sent multiple letters to Plaintiff's home advising him that the motorcycle would be processed as an abandoned vehicle if he did not recover it.  (*Id.*)  To avoid the fees associated with an abandoned vehicle fine, Plaintiff sent the notarized title to RRE in early October.  (*Id.* at 10).  Plaintiff claims that RRE then filed a "false writing with the State's Motor Vehicle Department ("MVD") on October 20, 2014, indicating that no one had contacted RRE claiming ownership or right of possession of the motorcycle during RRE's period of possession."  (*Id.*)  The MVD accepted RRE's "false writing."  (*Id.*)

Plaintiff sent letters in January 2015 disputing MVD's authority to transfer title of the motorcycle.  (*Id.*)  He also contacted PCSD, who informed him that he would have to pay $3,021.50 in storage fees to retrieve his motorcycle.  (*Id.*)  Plaintiff did not pay the storage fees or retrieve the vehicle.  On May 19, 2015, RRE sold the motorcycle.  (*Id.*)

### 1.    Case 1 and Defendant RRE

On August 27, 2015, Plaintiff sued Glover, RRE, Pima County, and the State of Arizona in Pima County Superior Court in Case Number CV-2015-3965 ("Case 1").[6] (Doc. 1-1).  In that action, Plaintiff alleged various state law claims arising out of the August 26,

---

[6] On March 25, 2016, Plaintiff requested a change of venue, discussed in detail, *infra*, in which he asked the Pima County court to transfer the case to Pinal County.  That request was granted, and Case 1 was thereafter designated Case Number CV-2016-937.  For ease of reference, this case will be referred to as "Case 1" regardless of the assigned case number.

2014 accident. (*Id.*)  Plaintiff specifically asserted a cause of action against RRE for conversion resulting from its storage and sale of the motorcycle. (*Id.* at 10).  RRE filed a Notice of Settlement in Case 1 on December 23, 2015. (Doc. 1-7 at 19).  On January 7, 2016, RRE and Plaintiff entered into a Settlement Agreement in which Plaintiff, in exchange for $3,000, agreed to "release and forever discharge the Defendant . . . from any and all claims, demands, actions and causes of action, and any liability whatsoever, on account of or in any manner arising or to arise out of the conversion of a 1993 Suzuki motorcycle." (Doc. 239, Ex. B).  RRE delivered a check for $3,000 to Plaintiff the following day, and Plaintiff deposited the funds. (*See* Doc. 2-5 at 50).

On January 15, 2016, Plaintiff filed a Notice of Non-Settlement and Application for Entry of Default. (Doc. 1-7 at 32).  In this filing, Plaintiff stated that he wished to revoke the Settlement Agreement due to newly-discovered evidence, and he raised "additional claims of due process, equal protection, and takings issues per 42 U.S.C. § 1983…that [required] Plaintiff to amend his complaint to include the new information and Section 1983 claims." (*Id.* at 33).  Plaintiff argued that new evidence revealed a conspiracy existed between the Arizona Department of Transportation ("ADOT"), PCSO, and RRE in which PCSO forces vehicles to be towed to RRE, the MVD transfers title upon request, and then RRE and PCSO share in the profits upon RRE's auction of the abandoned vehicles. Plaintiff therefore claimed that the Settlement Agreement was void because RRE's attorneys fraudulently concealed his potential RICO and § 1983 claims resulting from this conspiracy. (*Id.*)  RRE thereafter filed a Motion to Enforce the Settlement Agreement. (Doc. 2-2 at 12).

The state court judge held a hearing on RRE's Motion to Enforce the Settlement Agreement and Plaintiff's objections on March 7, 2016. (Doc. 2-4 at 33; Doc. 2-5 at 41-42).[7]  After hearing arguments and considering the briefing, the court evaluated and

---

[7] The Court notes that  RRE and Plaintiff expressly waived any confidentiality with respect to the Settlement Agreements at the March 7, 2016 hearing. (*See* Doc. 2-5 at 41).  The Settlement Agreement was also part of the removal papers attached to Defendants' unsealed Notice of Removal.  On August 2, 2018, RRE moved to seal its Motion for Summary Judgment and accompanying Separate Statement of Facts because the Settlement Agreement discussed in the motion and attached as an exhibit contains a confidentiality

- 4 -

rejected Plaintiff's objections to the Settlement Agreement. (Doc. 2-5 at 48-51). The court found that a valid settlement agreement existed between the parties. (*Id.* at 51). The court expressly held that a legal opinion could not form the basis of a fraud claim, and Plaintiff's evidence of alleged fraud was precluded by the parole evidence rule. (*Id.* at 50, 51). The court therefore granted RRE's Motion to Enforce the Settlement Agreement, dismissed all claims against RRE with prejudice, and granted RRE's request for attorney's fees and costs. (*Id.* at 51 ("[A]ll claims against Defendant RRE are **DISMISSED WITH PREJUDICE**.")). Plaintiff thereafter moved for reconsideration of the ruling on the enforceability of the Settlement Agreement, arguing he was fraudulently induced to enter the Settlement Agreement and had suffered intentional infliction of emotional distress regarding the original conversion claim. (Doc. 3-2 at 2-15). On March 23, 2016, the Superior Court denied Plaintiff's Motion for Reconsideration because "Plaintiff [had] not set forth any new arguments or facts that would justify reconsideration. . . ." (Doc. 3-2 at 23). On April 13, Plaintiff also moved for reconsideration of the state court's award of attorneys' fees to RRE on the grounds that "RRE…concealed that their criminal conduct was part of a joint Venture agreement with the Pima County Sheriff's Department ("PCSD") where the State acted in concert and or was complicit with RRE's and PCSD's criminal / unlawful conduct." (Doc. 3-9 at 25-26). On April 19, 2019, the state court denied this motion. (*Id.* at 29). On April 19, 2016, the court issued a final judgment in favor of RRE. (*Id.* at 30 ("Pursuant to Rule 54(b), the Court has expressly determined that there is no just reason for delay and expressly directs entry of this final Judgment in favor of Rod Robertson and dismissal with prejudice of Rod Robertson in the above-captioned matter")). Plaintiff did not timely appeal the judgment.

### 2. Case 1 – Change of Venue Issue

Following the Court's dismissal of RRE, on March 25, 2016, Plaintiff moved for a change of venue in Case 1. (Doc. 3-2 at 24). He specifically requested that his case be

clause. (Doc. 235 at 1). That Motion to Seal was granted. (Doc. 238). Upon the Court's discovery that the parties have waived that provision in open court, however, the Court will now unseal RRE's Motion for Summary Judgment and Separate Statement of Supporting Facts. Further, this Order will not be sealed.

transferred from Pima County to Graham County due to the corruption he perceived in Pima, Maricopa, Yuma, Cochise, and Santa Cruz counties. (*Id.* at 25 ("In keeping with Yarbrough and Plaintiff's research on corruption in adjoining counties (Arpaio's Maricopa County being the worst)…Graham County has the lowest case load with the least corruption; its only corruption issue required the removal of Judge Bolt due to misconduct. Imagine that."). While this motion was pending, on March 30, 2016, the Pima County court granted the State of Arizona's pending motion to dismiss it from the action. (Doc. 3-2 at 42-43). Plaintiff moved for reconsideration of that order ("Motion to Reconsider March 30 Order") (Doc. 3-3 at 2). In that Motion, he argued that the court had "no jurisdiction to rule on anything in this case after March 25, 2016," or after Plaintiff filed his Motion for Change of Venue pursuant to A.R.S. § 12-408. (*Id.*) Accordingly, he argued that the ruling in the State's favor amounted to "a violation of Plaintiff's State constitutional rights, and his U.S. Constitutional rights to due process and equal protection as protected under the Fourteenth Amendment via 42 U.S.C. § 1983" and raises "claims of a Judicial Takings." (*Id.* at 4).

On April 4, 2016, the court issued an order acknowledging that changes of venue where the county is a party under A.R.S. § 12-408 are not discretionary. (Doc. 3-8 at 35). The court explained, however, that "opposing parties are still entitled to be heard on the issue of to which county the action should be transferred, and to whether there is any reason why the action should not be transferred. A.R.S § 12-411(a)…. For these reasons, on March 25, the Court was holding Plaintiff's motion for change of venue for objection, and was not ready to rule on that issue." (*Id.*) The court nonetheless noted that, due to the non-discretionary nature of requests to change venue, "it is possible that the Court was divested of jurisdiction to decide the State's motion to dismiss when Plaintiff filed his motion on March 25." (*Id.*) The court therefore asked the parties to brief the issue in their response and reply to Plaintiff's Motion to Reconsider March 30 Order.[8] (*Id.*) Defendant State of

---

[8] Plaintiff also moved for reconsideration of the April 4 Order itself. (Doc. 3-8 at 36). Therein, he reiterated his change of venue arguments ("the only action permitted of this Court is to ask the parties to determine the most convenient county to which the objection of the parties do not apply or are least applicable and to transfer venue of the action to that

Arizona timely filed its response to Plaintiff's Motion to Reconsider March 30 Order, explaining the difference between venue and jurisdiction and arguing that, "[e]ven if Plaintiff proves venue should be changed, the jurisdiction of the Superior Court to hear his case is not affected. As a result, the Superior Court had jurisdiction at the time it entered its order on the final part of the State's Motion to Dismiss." (Doc. 3-9 at 4). Plaintiff filed his reply brief on April 9, 2016, in which he again argued that "once a party has filed a timely motion for change of venue, the Court's jurisdiction is limited to determining the most convenient county and 'transfer venue of the action to that county.'" (Doc. 3-9 at 8). On April 19, 2016, before ruling on the Motion to Reconsider March 30 Order, the court entered judgment for attorneys' fees and interest in favor of RRE and dismissed RRE from the action with prejudice. (Doc. 4 at 26-28). On April 21, 2016, after having "received and considered plaintiff's motion for reconsideration of the Court's 3/30/2016 ruling, defendant State of Arizona's response, and plaintiff's reply," the court denied Plaintiff's Motion to Reconsider March 30 Order that argued the Pima County court was without jurisdiction to enter orders following Plaintiff's request for a change of venue. (Doc. 3-9 at 33). Pursuant to Arizona Rule of Civil Procedure ("Arizona Rule") 54(b), the Court then entered judgment in favor of Arizona and dismissed it from the action with prejudice the same day. (Doc. 3-9 at 35).

On April 22, 2016, the court granted Plaintiff's motion for change of venue. (Doc. 3-9 at 39). The court held that there was no basis to support Plaintiff's allegations of corruption in the adjoining counties and although Plaintiff may have been "entitled to a change of venue, he is not entitled to forum shop." (*Id.*) Finding the Pinal County seat more convenient for the parties, attorneys, and witnesses than Graham County, the court transferred Case 1 to Pinal County. (*Id.*) Plaintiff subsequently filed several Notices of Appeal with the Pinal County Court. (*See* Doc. 4-1 at 31 (arguing "that Pima County

---

county") and colorfully objected to the court's request for additional briefing on the issue ("asking the State whether the Court has jurisdiction to decide the State's motion to dismiss is like asking Nazis if Jews were entitled to life, liberty, or property in Nazi Germany, circa 1942…a Judge without jurisdiction is nothing more than a poser in a black robe"). The Court denied Plaintiff's motion, explaining that "the law requires that Defendants be given the opportunity to be heard on Plaintiff's motions." (Doc. 3-8 at 40).

Superior Court lacked authority to enter any order or ruling on anything other than Change of Venue per A.R.S. § 12-408 after Plaintiff filed for a Change of Venue on March 25, 2016"); Doc. 4-4 at 52 (amending his notice of appeal to include all of the Pima County Court's rulings)).   On September 8, 2016, the Arizona Court of Appeals dismissed Plaintiff's appeal as to the State of Arizona as untimely.  (Doc. 4-6 at 11).   However, it granted Plaintiff's Motion to Suspend Appeal and reinvested jurisdiction in the trial court for thirty days to allow the court to rule on any pending motions.  (*Id.*)  On October 19, 2016, the appeals court dismissed Plaintiff's appeal against RRE.  (Doc. 29-1 at 2). Plaintiff did not seek any further review of these decisions.

### 3.  Case 2 – Consolidation and Removal

On August 24, 2016, while Case 1 was still pending against Glover and Pima County, Plaintiff filed another action related to the motorcycle accident in Pinal County Superior Court ("Case 2").[9]  Therein, he named 25 different public entities and individuals, including RRE, Pima County, and the State of Arizona, and asserted state and federal claims against them.

In his first claim for relief, Plaintiff sought a declaratory judgment "as to whether Pima County Superior Court had authority to issue any rulings other than to transfer [Case 1] after [Plaintiff] filed for change of venue pursuant to A.R.S § 12-408."  (Doc. 4-7 ¶¶ 94-97).  His § 1983 claims were broad and far-reaching, but in part alleged that "Plaintiff was denied due process and a post-deprivation remedy by Pima when Pima County Superior Court continued to issue rulings after Plaintiff made a request for a venue change, to affect a Takings or a Judicial Takings." (*Id.* at ¶ 159).  Plaintiff's claims against RRE in Case 2 stemmed from the issues litigated and ruled upon by the Superior Court in Case 1, therein he claimed: (1) the Settlement Agreement was void as against public policy because it provided financial incentive to PCSD to have RRE tow vehicles; (2) RRE's attorneys had negligently misrepresented Plaintiff's potential claims against RRE; (3) RRE had fraudulently concealed information related to the shared storage fees and profits between

---

[9] CV-2016-1438.

- 8 -

RRE and PCSD; (4) RRE had committed constitutional violations under 42 U.S.C. § 1983 with regard to the taking of motorcycle; (5) RRE had engaged in racketeering scheme with the other defendants related to the taking of his motorcycle; and (6) RRE had committed fraud upon the court when it failed to disclose the RRE and PCSD's alleged "kick-back" scheme related to the storage of the motorcycle. (*Id.*)

On August 29, 2016, prior to the Case 2 Defendants being served with the Case 2 Complaint, Plaintiff moved under Arizona Rule 42(a) to consolidate Case 2 with Case 1. (Doc. 4-5 at 35). Therein, Plaintiff argued that Case 1 "addresses claims arising from the incident and Plaintiff's injuries" and Case 2 "addresses claims arising from the Defendants' misconduct after the incident and in the adjudication of [Case 1]…." (Doc. 4-5 at 36). The two remaining Defendants from Case 1 – Glover and Pima County (hereinafter "Case 1 Defendants") – filed a response to the motion to consolidate, in which they agreed that consolidation would promote judicial efficiency given the common questions of law and fact. (Doc. 4-5 at 41). On September 22, 2016, the state court granted Plaintiff's motion and consolidated the actions. (Doc. 4-7 at 32). The Order granting consolidation stated: "A MOTION TO CONSOLIDATE having been filed by Plaintiff, and upon the Court's review of the same; IT IS HEREBY ORDERED that above entitled matter shall be consolidated into the Pinal County Superior Court Cause Number CV201600937, and that all further filings for CV201601438 shall be filed into CV201600937." (*Id.*)

Believing that the consolidation order merged the actions into one, Case 1 Defendants filed a Notice of Removal to this Court on September 26, 2016. (Doc. 1). In their Notice of Removal, Case 1 Defendants stated that the cases had been recently consolidated, and although the Case 1 complaint "had alleged only state tort claims and was not independently removable," the Case 2 complaint "included claims under 42 U.S.C. § 1983 for alleged violations of the United States Constitution" and the action was therefore "removable to this Court under 28 U.S.C. § 1441." (*Id.* at ¶¶ 2, 4, 5 & 8).

## DISCUSSION

Since removal to this Court, Plaintiff has frequently and repeatedly objected to the

Court's jurisdiction over this case. (*See generally* Docs. 11, 94, 268, 285, 286 & 315). In doing so, Plaintiff has advanced arguments that the Defendants were improperly forum shopping when they removed the case; that the case should be transferred to a different judge because the undersigned holds personal bias against Plaintiff; that the action should be transferred to a federal district court in Tucson[10] for Plaintiff's convenience; and that Plaintiff's notice of appeal of the state court's order dismissing RRE and the State of Arizona in Case 1 divested the court of jurisdiction over that case. These arguments have been addressed and rejected by the Court. (*See* Docs. 164 & 279). Plaintiff now argues that removal was improper because the state court's consolidation of the two cases prior to their removal did not merge them into one action over which the Court could exercise federal question jurisdiction. Plaintiff also argues that the Court should abstain from hearing Case 2. Defendants have not directly addressed these arguments, but generally respond by pointing to the Court's various orders on Plaintiff's other objections to the Court's jurisdiction. Because the Court has not directly assessed either the impact of the state court's consolidation of Case 1 and Case 2 on its own jurisdiction or Plaintiff's abstention arguments, however, it will do so now.

## I. Plaintiff's Objections to Removal and Requests to Remand (Docs. 285 & 286)

Under 28 U.S.C. § 1441(a), a defendant in a state court action may remove the action to a federal forum if "the district courts of the United States have original jurisdiction" over the action. 28 U.S.C. § 1441(a) (2003). The burden of demonstrating the existence of federal jurisdiction rests with the removing defendants. *Abrego Abrego v. The Dow Chemical Co*., 443 F.3d 676, 685 (9th Cir. 2006) ("It is to be presumed that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (internal quotation marks and citation omitted)). A defendant's right to remove is determined according to the plaintiff's pleading at the time of the petition for removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939). "Because lack of jurisdiction would make any decree in the case void and the continuation

---

[10] Plaintiff specifically sought reassignment to the Honorable Judge Frank Zapata. (Doc. 11 at 2).

of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

### A. Impact of Consolidation

Plaintiff first contends that this action should be remanded to state court because the consolidation of Case 2, which contained federal claims at the time of removal, with Case 1, which Removing Defendants concede in their Notice of Removal was "not independently removable", did not give this Court jurisdiction over the state-consolidated actions. Accordingly, the Court must assess the impact consolidation had on Defendants' ability to remove the actions to federal court.

At Plaintiff's request, the Arizona state court consolidated Case 1 and Case 2 under Arizona Rule 42(a). Arizona Rule 42(a) states "[i]f actions before the court involve a common question of law or fact, the court may (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Ariz. R. Civ. P. 42(a). The statute does not define the term "consolidate" and the order granting Plaintiff's request to consolidate the matters did not limit or expound on the intended scope of the consolidation.[11] In arguing that the two cases remained separate for purposes of removal, Plaintiff first cites to cases interpreting Federal Rule of Civil Procedure ("Federal Rule") 42(a). (*See* Doc. 285 at 2). These cases stand for the general principle that consolidation done under Fed. R. Civ. P. 42 does not combine two actions into one for purposes of removal to federal court. *See Hall v. Hall*, 138 S. Ct. 1118 (2018); *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933). While the Court agrees that *Hall* and *Johnson* stand for this proposition, these cases are inapposite because they address the effect of *federal* consolidation rather than consolidation of cases under

---

[11] Plaintiff contends that the state court judge consolidated Case 1 and 2 "for trial." (Doc. 285 at 3). The plain language of the Consolidation Order does not limit the consolidation in such a manner. (Doc. 4-7 at 32).

*state* procedural rules.  As noted above, the cases here were consolidated under Arizona law, not federal law.

Whether a state court consolidation order intended to merge two actions into one depends on the substantive state law from which the cases were removed.  In *Bridewell-Sledge*, for example, the Ninth Circuit held that where a California state court had consolidated two class actions "for all purposes" prior to removal to federal court, California law dictated that the two actions were "merged into a single proceeding with only one verdict or set of findings and one judgment, and the actions [were to be] treated as if only one complaint had originally been filed."  *Bridgewell-Sledge v. Blue Cross of California*, 798 F.3d 923, 929 (9th Cir. 2015) (citing *Hamilton v. Asbestos Corp.*, 998 P.2d 403, 415 (Cal. 2000) and *McClure v. Donovan*, 205 P.2d 17, 20 (Cal. 1989)).  The district court accordingly concluded that "when examining whether we have federal jurisdiction over [the consolidated actions], it is necessary to view [them] as a *single* consolidated class action that was united originally, rather than as two separate class actions filed at different times."  *Id.* at 930 (ultimately holding that when viewed as one action, the California "local controversy exception" required remand of the consolidated actions to state court) (emphasis added).  *See also e.g.*, *Cottman Transmission Systems, LLC v. Bence*, 2004 WL 98594, at *2 (E.D. Penn. Jan. 15, 2004) (denying plaintiff's motion to remand where under Pennsylvania law the state consolidation order made "clear that the combined actions [were] to be treated as if they 'had been originally commence as a single action'" resulting in an aggregated amount that met the requisite amount in controversy for diversity jurisdiction) (quoting *Keefer v. Keefer*, 741 A.2d 808, 811 (Pa. Super. Ct. 1999)).

Plaintiff contends Arizona case law supports the proposition that the state order consolidating these two actions did not merge them into one.  He specifically cites *Torosian v. Paulos*, 313 P.2d 382 (Ariz. 1957) and *Yavapai Cty v. Superior Court*, 476 P.2d 889 (Ariz. App. Ct. 1970).  Neither of these cases resolve the issue here.  In *Torosian*, the issue was whether the trial court had properly disposed of five actions that had been consolidated "for purposes of determining the issues only contained in the garnishment matters in each

separate case….'" 313 P.2d at 385. After holding a trial on those issues, the state court judge referred four of the cases back to their original divisions for entry of judgment. *Id.* at 389-90. On appeal, it was argued that referring the actions back to their original divisions for entry of judgment was improper and defeated the whole purpose of consolidating the actions. *Id.* at 390. The court rejected this argument, pointing out that Arizona Rule 42(a) grants trial courts "the power to order consolidation of actions for limited purposes or for the trial of certain issues only, and that *such an order of consolidation* does not thereby effect a merger of the cases consolidated." *Id.* (emphasis added) (referencing federal case law in accordance). In so finding, the court in *Torosian* was addressing the effect of a *limited* order of consolidation, i.e., an order that had expressly consolidated actions for the limited purpose of "determining the issues only contained in the garnishment matters." *Id.* The court did not, in other words, render a holding on the effect of an "all-purpose" or general consolidation order.

Yavapai County also addressed the effect of a limited-scope consolidation order. There, the issue was whether a party in a case that had been consolidated with another case "for purposes of trial" had waived its right to request a change of venue by failing to object to the consolidation. 476 P.2d at 890. The court found that such a right was indeed waived, because to conclude otherwise "would result in a De [sic] facto severance of the litigation, and render an order of consolidation 'for trial' meaningless." *Id.* at 891. "Since a retained right to change venue of a constituent cause of action is incompatible with the single-trial concept of consolidation, a waiver of the right to change venue is inherent in a failure to assert such right prior to consolidation." *Id.* In reaching this conclusion, the court cited *Johnson*, and noted, "[i]t seems clear, too, that a consolidation of cases 'for trial', as here, does not merge the suits into a single cause, or change the rights of the parties." *Id.*

Although both *Torosian* and *Yavapai County* cite *Johnson* (and other, similar federal law on the effect of consolidation), the Arizona cases do not resolve the present issue because these cases only address the effect of consolidation in the context of a limited-purpose consolidation order. In other words, *Yavapai County* and *Torosian* do not

stand for the proposition that an otherwise general consolidation order cannot merge two actions into a single cause; instead, they support the principle that a limited-purpose consolidation order in Arizona does not merge two cases into one—a proposition that is in accordance with federal law. Here, however, the state judge's Consolidation Order does not contain limiting language like the orders in *Yavapai County* and *Torosian*, but simply states that Case 2 "shall be consolidated into" Case 1 and that all future filings in Case 2 shall be filed "into" Case 1. Arizona law does not offer guidance as to how such a general consolidation order should be interpreted by a federal court assessing removal jurisdiction. In the absence of Arizona law that directly addresses the effect of this type of general consolidation order, the Court must determine how the Arizona Supreme Court would decide the issue. *See Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980) (holding that in the absence of a "clear state court exposition of a controlling principle," district courts must use their "best judgment" in predicting how a state's highest court would decide the issue). In doing so, a district court may utilize "not only intermediate appellate court decisions but also 'decisions from other jurisdictions, statutes, treatises, and restatements as guidance.'" *Walker v. Ford Motor Comp.*, 2019 WL 1531621, at *2 (9th Cir. April 9, 2019) (quoting *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990).

The Court first notes that Arizona Rule 42(a) is nearly identical to Federal Rule 42(a).[12] "Because Arizona has substantially adopted the Federal Rules of Civil Procedure, [Arizona courts] give great weight to the federal interpretations of the rules." *Edwards v. Young*, 486 P.2d 181, 182 (Ariz. 1971). *See also Anserv. Ins. Serv. Inc. v. Albrecht In and for Cnty. of Maricopa*, 960 P.2d 1159, 1160 (Ariz. 1998) (citing *Edwards* and applying federal case law to interpret the "short and plain" requirement under Arizona Rule 8(a)(2)).

As noted above, federal law is fairly uniform in holding that orders consolidating actions under Federal Rule 42(a), whether limited or general, do not merge two actions into

---

[12] Federal Rule 42(a) on consolidation states: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."

one.  *See Johnson*, 289 U.S. at 496-97 ("consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another"); *Hall*, 138 S. Ct. at 1118 (engaging in an in-depth historical review of the meaning of consolidation in the federal context); *Chaara v. Intel Corp.*, 410 F. Supp. 2d 1080, 1094 (D. N.M. 2005) (noting that because consolidation is done for the administrative convenience of the parties and the courts, an order consolidating two actions "fails to erase the fact that, underneath consolidation's facade, lies two individual cases"). *But see Hall*, 138 S. Ct. at 1131 (noting that given the "substantial discretion [given to district courts] in deciding whether and to what extent to consolidate cases," nothing in the traditional understanding of consolidation "means that district courts may not consolidate cases for 'all purposes' in appropriate circumstances").  Moreover, at least one court in this district has predicted that Arizona would likely follow federal law regarding the effect of a state's general consolidation order.  *Monroe v. Gagan*, 2008 WL 4418155, *3 (D. Ariz. Sept. 29, 2008).    In *Monroe*, the district court held that the actions that had been consolidated at the state level "retain[ed] their separate identities" for purposes of assessing subject matter jurisdiction upon removal.  *Id*.  The court found "[t]he fact that these two actions were consolidated in state court, prior to removal, does not change the result."  *Id*. n.2.  The court noted that the similarities between the Federal Rule 42(a) and Arizona Rule 42(a) "'strengthen[ed] the Court's conclusion that [Arizona] courts would not reach a different conclusion under the [Arizona] Rules.'"  *Id*. (quoting *Chaara*, 410 F. Supp. 2d at 1095)).

The court in *Chaara*, a case out of the District of New Mexico, came to a similar conclusion.  There, the court found that nothing in New Mexico's laws suggested that the state consolidation order at issue merged the cases into a single action, even though the state order explicitly stated the cases were to be consolidated "'for any and all purposes.'"  *Id*. at 1095.  The district court predicted that in the absence of New Mexico case law on the issue, New Mexico would follow federal law to hold that each of the cases retained their

individual nature notwithstanding their consolidation in state court. *Id.* at 1094 (stating "[c]onsolidation is not like a marriage, producing an indissoluble union from two distinct cases. Instead, consolidation is an artificial link forged by a court for the administrative convenience of the parties…"). Accordingly, the court held that "each [removed] case must satisfy jurisdiction on its own." *Id.* at 1095 (remanding one action for lack of subject matter jurisdiction and retaining jurisdiction over the other action because diversity jurisdiction existed at the time of removal).

Given these authorities, the Court finds that Arizona would likely follow federal law as to the effect of a general consolidation order like the one at issue here. Thus, in this case, the Court finds that the state-consolidation of Case 1 and Case 2 did not merge them into one action, and that each retained its separate identity. The factual history of the case supports this conclusion as well. Case 1 was litigated in state court for nearly a year before Case 2 was filed, and though there is factual overlap between the cases, Case 2 seeks different claims against entities and individuals that are not in Case 1.

Because the Court concludes that each case retained its own nature despite the state judge's consolidation of the actions, for removal of Case 1 and Case 2 to this Court to have been proper, there must have existed an independent jurisdictional basis for each case at the time of removal. *Id.* Indeed, federal law is clear that "any case lacking a separate jurisdictional basis must be remanded." *Id.*; *see also James v. CSX Transportation, Inc.*, 2007 WL 1100503, at *3 (S.D. Ga. April 9, 2007) (citing *Johnson*, 289 U.S. at 496–97). Accordingly, the Court will now assess whether jurisdiction over each case was proper at the time of removal.

### B.     Subject Matter Jurisdiction – Case 1

This Court did not have original jurisdiction over Case 1 at the time of removal. In their Notice of Removal, Removing Defendants concede that prior to consolidation, Case 1 lacked a jurisdictional basis from which to remove to federal court. (Doc. 1 at ¶ 5). In other words, complete diversity did not exist between the Plaintiff and Case 1 Defendants

at the time of removal,[13] and no federal question was apparent on the face of the Case 1 Complaint, which only contained state law claims. The Court also did not have supplemental jurisdiction over the remaining Case 1 claims under 28 U.S.C. § 1367(a). 28 U.S.C. § 1367 (a) states, in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in *the action* within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (emphasis added). The Ninth Circuit has clarified that "[s]upplemental jurisdiction must be exercised *in the same action* that furnishes the basis for exercise of supplemental jurisdiction." *Ortolf v. Silver Bar Mines*, 111 F.3d 85, 86 (9th Cir. 1991) (emphasis added) ("[t]he phrases 'in any civil action' and 'in the action[,]'" in section 1367(a), "require that supplemental jurisdiction be exercised in the same case, not a separate or subsequent case"). As discussed above, consolidation of these cases prior to removal did not render them the "same action" such that Case 2 could form the basis for the exercise of supplemental jurisdiction over the claims in Case 1. *Id.* Thus, section 1367 is also not a basis from which the Court can exercise jurisdiction over Case 1.

This Court never had subject matter jurisdiction over Case 1. Accordingly, this case must be immediately remanded to state court. All rulings made regarding the claims

---

[13] Glover disputes the relevance of the fact that "former parties who removed the case on federal question jurisdiction were not diverse at the time of the removal." She points out that the removing party that would otherwise defeat complete diversity— Defendant Pima County—is no longer in the case and as such, Glover *now* has an independent basis for removal based on diversity. Accordingly, she argues, remand would be futile. Given the Court's finding on the effect of the Consolidation Order, Glover's arguments fail on several grounds. Even if the Court were able to waive the one-year time limit for removal of diversity actions to federal court, *see* 28 U.S.C. § 1446, because this Court concludes that it never had jurisdiction over Case 1, all of its orders pertaining to Defendants Glover and Pima County are now void, including the portion of its Order granting Pima County's Motion for Summary Judgment in its favor on Plaintiff's claims against it at Doc. 164 at 22:14; 25:11; 28:6. On remand, Pima County will therefore be reinstated as a defendant in Case 1, and contrary to Glover's assertion, complete diversity will not exist between the parties. *See Gould v. Mutual Life Ins. Co. of NY*, 790 F.2d 769, 773 (9th Cir. 1986) ("When an action is removed based on diversity, complete diversity must exist at removal…This rule 'parallels the rule in federal question cases where a federal question must exist at the time the petition for removal is filed'") (internal citations omitted).

against the two Case 1 parties that remained at the time of removal[14]—Defendants Glover and Pima County—are therefore void. The Court, however, finds that since removal of these cases to federal court, it has treated the matter as one action, and has thus issued orders affecting the Defendants in both Case 1 and Case 2. This Order, which remands Case 1 as it existed at the time of removal for lack of subject matter jurisdiction, <u>only</u> affects the validity of the Court's rulings as they relate to the Case 1 claims against the Case 1 Defendants, i.e., Glover (who is only a defendant in Case 1) and Pima County (an entity that is named in both actions).

### C.    Subject Matter Jurisdiction – Case 2

Absent application of an abstention doctrine to one or more claims, this Court had subject matter jurisdiction over Case 2 pursuant to 28 U.S.C. § 1331. "'The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *In re NOS Communications, MDL No.* 1357, 495 F.3d 1052, 1057 (9th Cir. 2007) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Plaintiff's Case 2 Complaint advances 42 U.S.C. § 1983 claims against various Defendants. (Doc. 4-7 ¶ 127-164). Case 2 therefore fell within the subject matter jurisdiction of this Court. Despite the existence of these claims on the face of Plaintiff's Case 2 Complaint, Plaintiff argues that remand of Case 2 is warranted because (1) the Removing Defendants waived their right to remove when they consented to consolidation of the matters in state court; (2) the petition for removal was defective because it was untimely and it was not joined by all of the Defendants; and (3) Plaintiff's § 1983 claims are too "'inextricably intertwined' with state law that is also enmeshed with the [state] judgments" such that the case falls under *Rooker-Feldman* "and other abstention[]" doctrines. (Doc. 285 at 9-10).

### 1.    Procedural Objections to Removal of Case 2

---

[14] Both RRE and the State of Arizona had been dismissed from Case 1 at the time Defendants filed their Notice of Removal.

The Court need not address the merits of Plaintiff's procedural objections to the removal of Case 2 because it finds that they are untimely, and thus have been waived. Section 1447(c) provides, in pertinent part:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c). "The first sentence of § 1447(c) 'consigns procedural formalities to the care of the parties,'" while "[t]he second sentence 'assigns to the court concern for its jurisdictional prerequisites.'" *Corona–Contreras v. Gruel*, 857 F.3d 1025, 1028 (9th Cir. 2017) (quoting *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003)). "[P]rocedural requirements exist primarily for the protection of the parties" and "can be waived." *Kelton*, 346 F.3d at 1192. The Ninth Circuit has held that objections to waiver of the right to remove,[15] the timeliness of the removal petition, and issues related to consent are all procedural defects and can be waived if not timely objected to. *See Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 789-90 (9th Cir. 2018) (finding the argument that defendant waived his right to remove by filing a demurrer in state court prior to seeking removal was a non-jurisdictional defect that had to be timely

---

[15] A defendant "may waive the right to remove to federal court where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there, and to abandon his or her right to a federal forum." *Resolution Tr. Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994). However, such a waiver "must be clear and unequivocal." *Id.* (quoting *Beighley v. FDIC*, 868 F.2d 776, 782 (5th Cir. 1989)). Generally speaking, "the right of removal is not lost by action in the state court short of proceeding to an adjudication on the merits." *Id.* (quoting *Beighley*, 868 F.2d at 782). In light of these authorities, even if the Court were to reach Plaintiff's waiver arguments, it would find that the Removing Defendants did not waive their right to remove by agreeing to the consolidation of Case 1 and Case 2 in state court. Removing Defendants manifested no "clear and unequivocal" intention to have Case 2 litigated in state court when they agreed to consolidate the actions. In fact, in their response to Plaintiff's Motion to Consolidate, Removing Defendants specifically requested an expedited ruling on the issue due to the federal claims on the face of Plaintiff's Case 2 Complaint, which they believed suggested grounds for removal jurisdiction. Thus, they represented to the court that they wanted to ensure a timely petition for removal to federal court was filed. This clearly and unequivocally expresses an intent *not* to litigate in state court.

- 19 -

objected to by plaintiff for district court to properly remand); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980) ("Although the time limit [under § 1446(b)] is mandatory and a timely objection to a late petition will defeat removal, a party may waive the defect or be estopped from objecting to the untimeliness by sitting on his rights"); *Vaquez v. N. Cty. Transit Dist.*, 292 F.3d 1049, n.5 (9th Cir. 2002) (failure to timely object to unanimous consent requirement waived any potential procedural defect under § 1447(c)). Plaintiff makes these procedural objections far past the 30-day deadline to do so under § 1447(c). They are therefore waived. *Smith v. Myland Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014)("[T]he court may remand for defects *other* than lack of subject matter jurisdiction only upon a *timely* motion to remand.") (emphases added).

## 2. Abstention[16] and Issue Preclusion

Plaintiff also contends that this Court lacks subject matter jurisdiction to hear Case 2 because the *Rooker-Feldman* doctrine applies to this dispute.[17] The *Rooker-Feldman* doctrine sets forth the longstanding principle that lower federal courts lack jurisdiction to entertain collateral attacks on state court judgments. *Rooker v. Fid. Tr. Co.,* 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983). *See also* 28 U.S.C. § 1257. Application of the *Rooker-Feldman* doctrine is limited to lawsuits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting [federal] district court

---

[16] Many of Plaintiff's abstention-related arguments relate to the claims pending in Case 1. Because the Court finds that Case 1 remained a separate action post-consolidation and thus was non-removable, the Court will not reach those arguments.

[17] Plaintiff also mistakenly contends that abstention is also required under *Younger v. Harrison*, 401 U.S. 37 (1971) and "numerous abstention doctrines." (Docs. 285 at 13 & 286 at 5-6). A federal court is required to abstain under *Younger* if (1) there are pending state judicial proceedings; (2) the state proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to raise federal questions. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). The Court finds that *Younger* has no applicability here because there are no state judicial proceedings that are pending concurrently with this federal action. Instead, Defendants removed the state proceedings to this Court, thus ending any state court action. Moreover, Plaintiff's conclusory arguments for abstention under the *Colorado River* abstention doctrine (Doc. 285 at 13), the *Bruford* abstention doctrine (*id.*), and the *Pullman* abstention doctrine (*id.*) are unpersuasive. The Court declines to exercise its discretion to abstain from hearing Case 2 under these equitable abstention doctrines.

review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 292 (2005) (clarifying that federal court authority to review a state court judgment lies exclusively with the Supreme Court of the United States).

Plaintiff argues that his request for declaratory relief in Count One asks this Court to invalidate the state court's Rule 54(b) judgments dismissing RRE and the State of Arizona from the action because they were issued after Plaintiff moved for a non-discretionary change of venue. (Doc. 285 at 9). He says such a request is a forbidden de facto appeal of a state court judgment that is barred under *Rooker-Feldman*. (*Id.*) He also argues that his § 1983 claims are "inextricably intertwined" with the validity of the Arizona Rule 54(b) judgments, and the rest of the claims are "enmeshed" with state law related to the rulings. (*Id.*)

The Court finds that Case 2 does not fall under the narrow confines of the *Rooker-Feldman* doctrine. Instead, Plaintiff's Case 2 claims and issues regarding the validity of the state court's rulings are barred under Arizona preclusion laws and the Full Faith and Credit Act. The Ninth Circuit has clarified that where a federal plaintiff asserts an "independent claim" in federal court that is contrary to a legal conclusion reached by a state court in a case that he was party to, the issue is not jurisdictional under *Rooker-Feldman*, but is whether the claim is precluded under the Full Faith and Credit Act, 28 U.S.C. § 1738:

> "[B]oth [*Rooker–Feldman* and preclusion] define the respect one court owes to an earlier judgment. But the two are not coextensive. Preclusion in federal litigation following a judgment in state court depends on the Full Faith and Credit Statute, 28 U.S.C. § 1738, which requires the federal court to give the judgment the same effect as the rendering state would….The *Rooker–Feldman* doctrine, by contrast, has nothing to do with § 1738. It rests on the principle that district courts have only original jurisdiction….The *Rooker–Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

*Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003) (quoting *GASH Associates v. Village of Rosemont*, 995 F.2d 726, 728–29 (7th Cir. 1993).

It is fundamental that "[f]ederal courts must afford full faith and credit to state judicial proceedings." *Piatt v. MacDougall*, 773 F.2d 1032, 1034 (9th Cir. 1985) (citations omitted). The Full Faith and Credit Act at 28 U.S.C. § 1738 "tells a federal court what to do when there has been parallel litigation in state and federal court, and the state court suit has gone to judgment before the federal suit." *Noel*, 341 F.3d at 1148. Such full faith and credit necessitates that, "to determine the preclusive effect of a state court judgment, federal courts look to state law." *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (citation omitted); *see also Rutledge v. Ariz. Bd. of Regents*, 859 F.2d 732, 735 n.2 (9th Cir. 1988); *Noel*, 341 F.3d at 1160 ("§ 1738 requires a federal district court to give the same – not more and not less – preclusive effect to a state court judgment as that judgment would have in the state courts of the state in which it was rendered"). In Arizona,

> The doctrine of "collateral estoppel" is a doctrine of issue preclusion. It bars a party from relitigating an issue identical to one he has previously litigated to a determination on the merits in another action. The elements necessary to invoke collateral estoppel are: the issue is actually litigated in the previous proceeding, there is a full and fair opportunity to litigate the issue, resolution of such issue is essential to the decision, there is a valid and final decision on the merits, and there is a common identity of the parties.

*Gilbert v. Board of Medical Examiners*, 745 P.2d 617, 622 (Ariz. Ct. App. 1987) (citations omitted). *Accord Hawkins v. Ariz. Dep't of Econ. Sec.*, 900 P.2d 1236, 1239 (Ariz. Ct. App. 1995). Like claim preclusion, issue preclusion recognizes that a previous determination is conclusive in a subsequent action. *Ferris v. Hawkins*, 660 P.2d 1256, 1258 (Ariz. Ct. App. 1983) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (noting that both res judicata and collateral estoppel are doctrines that serve to "'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication'")). But notably, issue

preclusion may bar subsequent action even on a different claim so long as that claim relies on the issue already adjudicated.  *See* Restatement (Second) of Judgments § 27 (1982).

Here, the issue of whether the state court judge lacked jurisdiction to rule on pending motions after Plaintiff filed a non-discretionary motion for change of venue was litigated and decided in Case 1.  As the chronology of events *supra* reveals, all of the elements required under Arizona's rules of issue preclusion bar Plaintiff from relitigating—whether in federal or state court—the validity of the Pima County rulings in Case 1.  Plaintiff was given a fair opportunity to litigate the issue of the Pima County's jurisdiction in state court, the issue was actually litigated, resolution of the issue was essential to the court's decision to dismiss the State of Arizona, and there was a valid and final decision on the merits.  The fact that Plaintiff's appeal of the issue was untimely does not undermine the finality of the decision.  *Piatt*, 773 F.2d at 1034 (holding that where a judgment on the merits can be appealed but is not, that judgment is final under Arizona law) (citing *Casa Grande Trust Co. v. Superior Court*, 444 P.2d 521, 523 (Ariz. Ct. App. 1968)).[18]  Accordingly, Plaintiff's general contentions that the Court is barred from deciding this issue are correct, but not because the Court lacks jurisdiction over it.  Instead, in this case, Plaintiff's claims about the validity of the Pima County rulings, which turn on whether the Pima County court had jurisdiction to make rulings after a plaintiff requested a change of venue, are squarely barred by preclusion principles.  Contrary to Plaintiff's argument, the Court has properly exercised jurisdiction over Case 2 and thus denies his request to abstain from hearing those claims and to remand the case to state court.

### D.    Sanctions and Fees

Plaintiff asks the Court to require Removing Defendants to pay the costs and attorneys' fees incurred by Plaintiff as a result of any improper removal.  The removal statute provides that a district court may require payment of costs and attorneys' fees

---

[18] Moreover, Plaintiff's attempt to appeal this decision after the time to do so had expired is no different than choosing not to appeal a judgment.  *Piatt*, 773 F.2d at 1034.  The judgment against Plaintiff could have been appealed during the allowed time frame, but was not.

incurred because of an improper removal. U.S.C. § 1447(c). However, in the absence of "unusual circumstances," fees and costs may be awarded "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141, (2005); *see also Patel v. Del Taco, Inc.*, 446 F.3d 996, 999 (9th Cir. 2006). District courts have "wide discretion" in determining whether to award fees and costs under Section 1447(c). *Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443, 447 (9th Cir. 1992).

Here, Removing Defendants removed on the belief that the state order consolidating Case 1 and Case 2 merged the actions into one and provided a basis for this Court to exercise federal subject matter jurisdiction over both actions. As discussed above, Arizona law does not offer clear guidance as to the effect of a general consolidation order, and the Court finds that although Removing Defendants ultimately erred in their prediction, they had a reasonable basis for seeking removal. "[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Awarding fees and costs under § 1447(c) can also serve to deter spurious removals, orchestrated to prolong litigation and impose costs on the opposing party. But there is no evidence here of improper motive, unreasonable bases for removal, or other "unusual circumstances" — at least not on the part of Removing Defendants. *See Martin*, 546 U.S. at 141. Accordingly, Plaintiff's request for reimbursement of expenses and costs is denied.

## II.    RRE's Motion for Summary Judgment (Doc. 239)

The Court will now assess the merits of RRE's Motion for Summary Judgment (Doc. 239), the only remaining Defendant in Case 2. Plaintiff has not filed a responsive memorandum within the extended time allowed by the Court. (*See* Doc. 267 at 3). The Court recognizes that, generally, "such non-compliance may be deemed a consent to the…granting of the motion and the Court may dispose of the motion summarily." LRCiv 7.2(i). However, "a motion for summary judgment cannot be granted simply because the

opposing party violated a local rule." *Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir. 1995) (citing *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993)).  Accordingly, the Court will evaluate the merits of RRE's Motion.

### A.     Standards for Summary Judgment

RRE moves for summary judgment on all of Plaintiff's claims, arguing the preclusive effect of the parties' Settlement Agreement in Case 1 and *res judicata*. (Doc. 239 at 4).

A court shall grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In evaluating summary judgment motions, a court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party bears the initial burden of identifying materials in the record to show the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party carries its burden, then the non-moving party must establish the existence of a genuine dispute as to a material fact beyond any "metaphysical doubt" that the non-movant may have. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

A genuine issue for trial cannot be based solely upon subjective belief. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  However, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  Material facts are those identified in substantive law. *Anderson*, 477 U.S. at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Here—because Plaintiff did not respond to RRE's Motion—the Court will decide

the Motion for Summary Judgment without his response. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) ("The party opposing the motion is under no obligation to offer affidavits or any other materials in support of its opposition."). To determine whether there is a genuine issue of material facts, the Court will look to the facts pled in Plaintiff's Case 2 Complaint (Doc. 4-7).

**B.    Analysis**

RRE argues that Plaintiff's claims against it are barred by both the release language in the parties' Settlement Agreement and the Pima County Superior Court's March 8, 2016 Order enforcing the Settlement Agreement in Case 1. (Doc. 2-5 at 51). The Court agrees.

The Court first finds that the terms of the release clause in the parties' Settlement Agreement encompasses and thus precludes the claims Plaintiff has asserted against RRE in Case 2. A court's role in interpreting a contract is to ascertain and enforce the parties' intent. *ELM Ret. Ctr., LP v. Callaway*, 246 P.3d 938, 941 (Ariz. Ct. App. 2010). To determine the parties' intent, the court will "look to the plain meaning of the words as viewed in the context of the contract as a whole." *United Cal. Bank v. Prudential Ins. Co.*, 681 P.2d 390, 411 (Ariz. Ct. App. 1983). When the terms of a contract are plain and unambiguous, its interpretation is a question of law for the court. *Chandler Med. Bldg. Partners v. Chandler Dental Grp.*, 855 P.2d 787, 791 (Ariz. Ct. App. 1993). If the contract language is reasonably susceptible to more than one meaning, extrinsic evidence may be admitted to interpret the contract. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1144-45 (Ariz. 1993).

Here, the language of the settlement agreement between Plaintiff and RRE states, in pertinent part, that "[Plaintiff] . . . does hereby release and forever discharge the Defendant . . . from any and all claims, demands, actions and causes of action, and any liability whatsoever, on account of or in any manner arising or to arise out of the conversion of a 1993 Suzuki motorcycle." Applying the contract principles above, the Court concludes that the release language plainly encompasses Plaintiff's Case 2 claims against RRE in Case 2, all which arise out of the alleged conversion of Plaintiff's motorcycle, and

specifically, the alleged collusion scheme stemming from the impoundment of his motorcycle.

The Court also finds that like the validity of the Pima County court's rulings, Plaintiff's objections to the validity of the Settlement Agreement (and thus its preclusive effect on his Case 2 claims) are precluded. Plaintiff first raised the issue of the Settlement Agreement's validity in state court on January 1, 2016, in his Notice Non-Settlement and Application for Entry of Default. (Doc. 1-7 at 32-35). Therein, Plaintiff argued that RRE fraudulently withheld information related to alleged kick-back scheme in which PCSD, RRE, and ADOT colluded to generate revenue by taking his motorcycle, storing it, and sharing the profits from its eventual sale. (*Id*.) He also claimed that RRE's attorneys misrepresented the viability of possible § 1983 and RICO claims against RRE. (*Id.*) Plaintiff then moved for an expedited hearing on the matter, which was granted on March 4, 2016. (Doc. 2-4 at 33). Three days later—and in response to RRE's fully-briefed Motion to Enforce Settlement—Plaintiff presented his arguments as to the Agreement's invalidity before Judge Villareal in the Superior Court. (Doc. 2-5 at 41). After hearing arguments and taking the matter under advisement, the Superior Court issued a ruling upholding the validity of the Settlement Agreement on March 8, 2016. (Doc 2-5 at 48-51). Following this ruling and the subsequently denied Motions for Reconsideration (all of which reiterated arguments related to the same collusion theory), the Superior Court declared the Settlement Agreement valid, awarded attorneys' fees to RRE, and entered final judgment in favor of RRE on April 19, 2016. (Doc. 3-9 at 31-32 (finding, in part, "The Settlement Agreement between Plaintiff and Rod Robertson is valid and enforceable" and that "Plaintiff breached the Settlement Agreement")). The Superior Court's judgment against Plaintiff thereafter became final because Plaintiff's appeal was denied by the Arizona Court of Appeals as untimely. (*See* Doc. 240-2, Ex. I (Plaintiff's June 17, 2016 Notice of Appeal) and Ex. J (Order denying Plaintiff's Notice Pursuant to ARCAP Rule 9(e)(2) & Motion to Suspend Appeal and Motion to Extend Time on Appeal and Motion for Reconsideration) ("it appearing that the appeal was untimely filed,…the above-entitled appeal is

DISMISSED.")). *Piatt*, 773 F.2d at 1034.

Plaintiff was given full opportunity to litigate the Settlement Agreement's validity, he did in fact litigate it, resolution of its validity was essential to the court's final decision, final judgment was entered, and the Settlement Agreement itself was declared valid. If Plaintiff disagreed with the judge's resolution of this matter, his proper course was to appeal the judgment. He did not timely do so. His objections to the Settlement Agreement cannot now be collaterally attacked in this action. *Crosby-Garbotz v. Fell*, 434 P.3d, 143, 146 (Ariz. 2019) ("As our courts have noted, the doctrine [of issue preclusion] seeks to avoid the basic unfairness associated with duplicative, harassing litigation.").

For the foregoing reasons, Plaintiff is precluded from relitigating the issue of the Settlement Agreement's validity. Because the Settlement Agreement cannot be challenged in this Court, Plaintiff is therefore permanently barred from bringing against RRE "any and all claims, demands, actions and causes of action, and any liability whatsoever, on account of or in any manner arising or to arise out of the conversion of a 1993 Suzuki motorcycle." The Court finds that all of Plaintiff's Case 2 claims against RRE fall within the scope of this release language. The Court will thus enter summary judgment in favor of RRE on all of Plaintiff's claims and dismiss it from this action.

**III.    Plaintiff's Motion for Leave to Amend his Case 2 Complaint (Doc. 308)**

The Court will finally address Plaintiff's recent Motion to Amend his Case 2 Complaint. (Doc. 308). Plaintiff has attached a 74-page red-lined version of the changes he proposes to his First Verified Complaint in Case 2. The requested changes transform what was a 30-page complaint into one that is 51-pages long. The proposed complaint contains multiple new claims against multiple defendants, some of whom this Court dismissed from Case 2 with prejudice in 2017, and some who would be new to the action. Indeed, Plaintiff's proposed amendments are far-reaching and extensive. Despite Plaintiff's adamant arguments that this Court lacks jurisdiction over Case 2, he now seeks to amend and "clarify" his federal causes of action under § 1983. (*See* Doc. 308 at 7). Plaintiff also seeks to add Glover's law firm as a defendant, and to advance various new

state law claims against the firm and Glover related to her "bad faith" litigation strategies and "abuse of process" in defending against Plaintiff's claims. (*Id.*) Plaintiff also wants to assert a claim for fraudulent conveyance against Glover, her law firm and her son, as a result of a transfer of assets Glover made to her son; add a claim for emotional duress against Glover for her "continued failure to apologize for running [Plaintiff] over and harassment from her attorneys"; and bring a broad and disjointed claim for "abuse of process" related to Case 1 Defendants' improper removal of the cases, their attempt to schedule Plaintiff's independent medical examination, and their creation of "bogus drama" that he said resulted in the Court holding Plaintiff in contempt for violating a no-contact order between Plaintiff and Glover. (*Id.*) He also includes in his abuse of process claim allegations that Pima County fraudulently represented where Plaintiff should submit his notice of claims and committed "other Violative Acts." (*Id.*) His proposed amendments also reflect pages of edits and additions to the general allegations section of the pleadings. (*Id.*)

According to this Court's Scheduling Order, the deadline for the parties to amend their pleadings was February 13, 2019 (Doc. 280).[19] Plaintiff filed a "Notice of Stipulation for Extension" of the case management deadlines on February 13, 2019, in which he represented that Glover agreed to a one-month extension of all case management deadlines in the Scheduling Order but that Defendant RRE had not responded to his request. (Doc. 293). On February 19, 2019, RRE filed a response to the Stipulation, stating "[a]lthough this matter has been prolonged and continued many times, as the result of Plaintiff's medical condition," it would not take a position on Plaintiff's motion for extensions of time of case management deadlines but would defer to the Court's discretion. (Doc. 295 at 3). In its March 8, 2019 Order, the Court granted Plaintiff's request for an extension of the deadlines for completing fact discovery, expert disclosures, expert

---

[19] Plaintiff has repeatedly objected to the validity of the Scheduling Order because the Court lacked subject matter jurisdiction over the matter and thus was without authority to enter it. The Court agrees that the Scheduling Order is void as is relates to Glover, who was the only remaining Case 1 Defendant when it was entered. The Order remains fulling binding on all parties to Case 2, which, at the time it was issued, included Plaintiff and Defendant RRE.

deposition, dispositive motions, and engaging in settlement discussions. (Doc. 304 at 1-2). The Court did not, however, set a new deadline for amendment of pleadings or joinder of parties and instead, ordered "that the remainder of the original Rule 16 Scheduling Order (Doc. 280) is **AFFIRMED**." (*Id.* at 2). Plaintiff filed his motion seeking leave to amend on March 15, 2019. (Doc. 308).

Generally, Rule 15(a)'s liberal pleading standard governs a motion to amend pleadings to add claims or parties. However, Rule 16 also applies here because Plaintiff filed his request to amend his Complaint after the Rule 16 Scheduling Order's deadline for amendments passed. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992). "[O]nce the district court has filed a pretrial scheduling order pursuant to Rule 16 which establishes a timetable for amending pleadings, a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a)." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999) (citing *Johnson*, 975 F.2d at 607–08). To circumspect a Rule 16 order by invoking the standards of Rule 15 would "undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Johnson*, 975 F.2d at 610; *see also Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("If [the court] considered only Rule 15(a) without regard to Rule 16(b), [it] would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."). Accordingly, the Court will evaluate Plaintiff's Motion first under Rule 16, and then, if necessary, under Rule 15(a).

Under Rule 16, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Under the "good cause" standard, "[t]he pretrial schedule may be modified if it cannot reasonably be met despite the diligence of the party seeking the extension. If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (internal quotation marks and citation omitted). *See also C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.,* 654 F.3d 975, 984

(9th Cir. 2011) ("[t]he district court is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order . . . will not be disturbed unless they evidence a clear abuse of discretion."), *cert. denied sub nom. C.F. v. Corbett*, 565 U.S. 1200 (2012) (citations and internal quotation marks omitted) (omission in original). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609 (citing *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me 1985)).

Federal courts within the Ninth Circuit follow "[a] three-step inquiry in resolving the question of diligence in the context of determining good cause under Rule 16[.]" *Morgal v. Maricopa County Bd. of Sup'rs*, 284 F.R.D. 452, 460 (D. Ariz. June 6, 2012) (quoting *Grant v. United States*, 2011 WL 5554878, at *4 (E.D. Cal. Nov. 15, 2011), *adopted by*, 2012 WL 218959, at * 1 (E.D. Cal. Jan. 23, 2012)). Under this three-step inquiry:

> [T]o demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that []he was diligent in assisting the [c]ourt in creating a workable Rule 16 order; (2) that h[is] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding h[is] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that []he was diligent in seeking amendment of the Rule 16 order, once it became apparent that []he could not comply with the order.

*Morgal*, 284 F.R.D. at 460 (alterations in original) (quoting *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (other citations omitted)). "[U]nder these case-specific circumstances, the diligence inquiry…turns primarily upon consideration of [plaintiff's] diligence 'between the discovery of new information and the motion to amend.'" *Morgal*, 284 F.R.D. at 460 (quoting *Aldan v. World Corp.*, 267 F.R.D. 346, 357 (N. Mar. I. 2010).

In arguing diligence, Plaintiff offers a myriad of reasons, including that he had "unforeseeable emergency surgery on his good right eye" on February 9, 2019; that he was too busy with "pressing deadlines" in another case he has on appeal to the United States

Supreme Court; and that he "must proofread, edit and assemble exhibits to comply with the Court's Order for Initial Disclosure per Rule 26(a)." (Doc. 308 at 3). He also claims that he had "anticipated that [his prior counsel] would amend his Complaint as requested, but the attorneys failed to do so to prejudice Plaintiff." (*Id.*)

Based on the nature of the proposed amendments and the timing of Plaintiff's Motion to Amend, the Court is unpersuaded by the reasons that purportedly prevented Plaintiff from complying with the Scheduling Order's deadline by which to amend his pleadings or join parties. It is specifically the second prong of the diligence analysis that Plaintiff fails to establish here, as it is not the case that his requests are the result of the development of matters that could not have been reasonably foreseen or anticipated at the time of the Rule 16 Scheduling Conference. For example, Plaintiff gives no indication that he received some new information or that some other circumstance arose between the August 22, 2018 Rule 16 Scheduling Conference and the filing of plaintiff's Motion to Amend on March 15, 2019, which prompted his needed amendments. Indeed, by all accounts, it appears that Plaintiff was on notice, well before the Scheduling Order issued, of the facts underlying his proposed amendments. *See DRK Photo v. McGraw-Hill Comp. Inc.*, 2014 WL 12651055, at *3 (D. Ariz. Oct. 20, 2014) (denying motion to amend and join parties under Rule 16(b) because plaintiff "was on notice, even before the Scheduling Order was entered, that its standing was at issue"*), aff'd sub nom. DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC,* 870 F.3d 978 (9th Cir. 2017). He was on notice of the deficiencies related to his federal claims by at least September 2017 when the Court dismissed all the Case 2 claims, with the exception of those portions of his § 1983 claims that could be saved by amendment. (Doc. 164 ("the September 2017 Order"). The September 2017 Order expressly gave Plaintiff thirty days to cure noted deficiencies. (*Id.*)[20]

---

[20] The exact language of the September 2017 Order stated:

> Counts One, Two, Three, Four, Six, and Seven in case two cannot be saved by amendment because they are barred by the statute of limitations or the notice of claim limitation. Portions of Count Five cannot be saved by amendment as to the claims against the State of Arizona, Judicial Branch

Plaintiff did not file an amended complaint within that timeframe.[21]  Then, on August 22, 2018, the Court held a Rule 16 Scheduling Conference.  Plaintiff, represented by counsel at that time, fully participated in and filed a Rule 26(f) Report with the Court in preparation for that hearing.  Plaintiff represented in the Rule 26(f) Report that he was not expecting to add additional parties or contemplating filing any motions to amend.  (Doc. 241 ¶¶ 5-6).  Due to various jurisdictional concerns the Court had at that time, the Court did not issue a Scheduling Order immediately following the parties' Rule 16 Scheduling Conference, but waited until it could assess the latest jurisdictional concerns presented by the unusual posture of the case.  When the Scheduling Order did issue, it clearly informed the parties to "**TAKE NOTICE** that the deadlines contained herein are real. Pursuant to the Civil Justice Reform Act of 1990 the Court is obligated to facilitate civil cases in a manner which reduces delay of adjudication. The Court expects the parties to adhere to the case management schedule as well as to the Federal Rules of Civil Procedure and Local Rules. Requests to extend deadlines shall be made only under extraordinary circumstances[.]" (Doc. 280 at 8).  These extraordinary circumstances are not present here.  Again, Plaintiff does not argue that he has discovered new facts through the discovery process that substantiate a finding of diligence and thus justify the late proposed amendments, which are both extensive and at times run contrary to this Court's prior dismissal of claims.[22]  *See*

> defendants, individual Pima County defendants Cornelio, Huckelberry, Miller, Valadez, Bronson, Carroll, and Elisas because they are immune from suit.  Plaintiff will be granted leave to amend count five as it relates to Pima County and individual Pima County defendants Stuckey, White, Daniels, and Kendig.  Plaintiff will have 30 days to submit a first amended complaint to cure the deficiencies outlines in section IV.B.i.c.-d, *supra*.

(Doc. 164 at 27).

[21] Instead of amending his Complaint, Plaintiff requested a 343-day extension of time to file a motion for reconsideration of the Court's September 2017 Order and a motion to amend his complaint so that he could "address ALL parties with more particularity." (Doc. 166).  In denying this request, the Court stated that it would have likely granted Plaintiff a reasonable extension of time to file both motions, but a 343-day extension was not reasonable.  (Doc. 233 at 2-3).

[22] Although the Court ultimately finds Plaintiff has failed to establish good cause to allow his proposed amendments, and thus the Court need not assess the futility of the proposed

*Jackson*, 186 F.R.D. at 609.  The Court thus finds that Plaintiff has not diligently sought the proposed amendments and thus good cause does not exist to grant his Motion to Amend.

Because Plaintiff has not met his burden of showing good cause under Rule 16, "the inquiry should end." *Johnson*, 975 F.2d at 609.  The Court will, however, also briefly note that allowing the extensive modifications would also significantly prejudice the existing and proposed Defendants.  This case has been pending since August 2016, and the vast number of the Defendants were dismissed from the action in 2017 when the Court dismissed with prejudice all but those portions of Plaintiff's § 1983 claims that could possibly be saved by amendment. (*See* Doc. 164 at 27-28).  Allowing Plaintiff to add them again some two years later would require those parties to start anew with regard to discovery and only further delay the resolution of this case.  Accordingly, and "although not critical to its finding that plaintiff did not act diligently in seeking leave to amend," the Court finds that the presence of this prejudice to Defendants offers additional support for its denial of Plaintiff's Motion to Amend.  *Morgal*, 284 F.R.D. at 463.

## CONCLUSION

When the Pima County state court consolidated Case 1 and Case 2, the cases did not merge into one action.  Accordingly, for removal of Case 1 to have been proper, Removing Defendants were required to establish an independent basis for this Court's subject matter jurisdiction.  They cannot.  Accordingly, Case 1 will be remanded to Pinal County state court.  The Court rejects Plaintiff's objections to removal of Case 2, however.  Plaintiff waived any procedural objections regarding Defendants' removal of the Case by not presenting them within the statutory timeframe.  The Court properly exercised jurisdiction over Case 2 where there were clear federal claims presented on the face of Plaintiff's Case 2 Complaint and because no abstention doctrine bars the Court from resolving the claims therein.

---

claims under Rule 15, the "clarifying" amendments that Plaintiff proposes to his § 1983 claims also do not cure the deficiencies noted in the Court's September 2017 Order but largely reiterate the claims that have already been dismissed.

Having established its jurisdiction over Case 2 Defendant RRE, the Court finds Plaintiff's claims against RRE are barred by the release language in the parties' enforceable Settlement Agreement and that Plaintiff is similarly barred from relitigating the enforceability of the Settlement Agreement under Arizona's preclusion rules.

Finally, because Plaintiff has not met his burden of showing good cause under Federal Rule 16(b)(4), his Motion to Amend is denied.

Accordingly,

**IT IS ORDERED** that the Stay in this action (Doc. 337) is **lifted**.

**IT IS FURTHER ORDERED granting in part and denying in part** Plaintiff's requests to remand this action (Docs. 285, 286, 315).  Plaintiff's request to remand Case 1 is **granted** and Case 1 shall immediately be remanded and transferred back to Pinal County state court.  All orders that have been issued since removal of Case 1 that affect Case 1 Defendants Glover and Pima County are **void** as they relate to those Defendants.  The motions pending at Docs. 331, 339 & 341, which relate to Case 1 claims, shall be terminated as **moot**.   Plaintiff's request to remand Case 2 is **denied**.

**IT IS FURTHER ORDERED denying** Plaintiff's Motion to Disqualify Per 28 U.S.C. § 455 (Doc. 315).

**IT IS FURTHER ORDERED vacating** the Court's Order granting RRE's Motion to Seal (Doc. 238) and directing the Clerk to **unseal** RRE's Motion for Summary Judgment (Doc. 239) and Separate Statement of Facts in Support of its Motion for Summary Judgment (Doc. 240).

**IT IS FURTHER ORDERED granting** RRE's Motion for Summary Judgment (Doc. 239) and **dismissing** RRE from Case 2, with prejudice.

**IT IS FURTHER ORDERED denying** Plaintiff's Motion to Amend his Complaint (Doc. 308).

…

…

…

**IT IS FINALLY ORDERED** directing the Clerk of Clerk to terminate this action.

Dated this 19th day of June, 2019.

Honorable Diane J. Humetewa
United States District Judge